# United States District Court

## DISTRICT OF DELAWARE

UNITED STATES OF AMERICA

v.

THOMAS PENDLETON

Criminal Complaint

CASE NUMBER: 08- 57M

REDACTED

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about __March 10, 2008__ in the District of Delaware, the defendant:

**failed to register as a sex offender**

in violation of Title ____18____ United States Code, Section(s) ____2250____.

I further state that I am a(n) __Deputy United States Marshal__ and that this complaint is based on the following facts:

**See attached Affidavit**

Continued on the attached sheet and made a part hereof:   Yes

Signature of Complainant
William David
Deputy United States Marshal
U.S. Marshal's Service

FILED
MAR 1 1 2008
U.S. DISTRICT COURT
DISTRICT OF DELAW.

Sworn to before me and subscribed in my presence,

__March 11, 2008__   at   Wilmington, DE
Date                       City and State

Honorable Mary Pat Thynge
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

# AFFIDAVIT

Your affiant is William David, who being duly sworn, states:

1. I am a Deputy United States Marshal and have been so employed for approximately 13 years. My duties as a Deputy United States Marshal include criminal investigations into fugitives, threats, and sex offender registration violations, as outlined in the Adam Walsh Child Protection and Safety Act of 2006 ("the Adam Walsh Act"). I learned the following facts contained in this affidavit from reviewing reports, computer inquires, and conversations with other law enforcement officers, but not all facts relating to the investigation are included herein.

2. On or about December 11, 1990, in the State of New Jersey, PENDLETON was convicted of Aggravated Sexual Assault Against a Minor and was sentenced on September 10, 1993, to 7 years in prison.

3. PENDLETON subsequently had his sex offender registration and probation transferred from New Jersey to the District of Columbia, where he was supervised by the Washington, D.C. Court Services & Offender Supervision Agency (CSOSA).

4. PENDLETON's sister informed CSOSA that PENDLETON left the United States for Latvia at the end of October, 2001. On December 6, 2001, PENDLETON was arrested in the Republic of Latvia, for "committing lewd activities withe persons under against their will," specifically the sexual molestation and assault of a 13 and 9 year old boy, and PENDLETON was convicted of this offense and sentenced to 5 years in prison, of which he served approximately 3 ½ years in prison. On May 23, 2004, the defendant's conviction was affirmed in the Supreme Court of the Republic of Latvia. PENDLETON was deported from Latvia on March 18, 2005, and arrived in New York City.

5. On March 28, 2005, PENDLETON contacted Yolanda Stokes of CSOSA. Ms. Stokes informed PENDLETON that he would be re-classified as a sex offender by virtue of his Latvia conviction, and informed PENDLETON that he has 72 hours to report any changes of address to CSOSA, and that he was required to report to CSOSA weekly while PENDLETON was traveling to Chicago.

6. On April 29, 2005, PENDLETON sent an email to Yolanda Stokes of the CSOSA, in which he cited a United States Supreme Court case, *Small v. United States*, and argued that "foreign court convictions are not automatically valid in the USA," so that "my classification [as a sex offender] should revert to the lower level that it had before, eliminating any reference to any foreign conviction." In this email, PENDLETON told CSOSA that he was moving his residence to              , Wilmington De, 19801. PENDLETON further wrote in the email: "Effective May 1, 2005, I am moving my residence from the District of Columbia to the State of Delaware. I have already been in contact with the Delaware authority [sic], confirming my responsibilities there (Delaware State Police, State Police, State Bureau of Identification, Sex Offender Central Registry, PO Box 430, Dover, DE, 19903 (Tel: 302-739-5882)."

7. On or about November, 2005, PENDLETON again left the United States and traveled to Paris, en route to Hamburg, Germany. On June 2, 2006, PENDLETON was arrested in Kempten, Germany for the sexual abuse of a minor, and on October 6, 2006, PENDLETON was convicted and sentenced to 2 years and 6 months incarceration for this crime.

8. While imprisoned in Germany, PENDLETON had several contacts with U.S. embassy personnel in which he made specific inquiries about the effect of his German conviction on his status upon his return to the United States. PENDLETON asked the consular service whether he would be subject to a "three strikes" provision when he returned to the United States. The Consular service advised PENDLETON to consult with the Attorney General for the state or states in which he planned to reside to determine the applicability of their state laws to his German conviction, including whether any "three-strikes" provision might apply.

9. Under the Adam Walsh Act and the Sex Offender Registration and Notification Act (SORNA) foreign sex offense convictions trigger federal registration requirements so long as the conviction was achieved in a process that guaranteed due process and fundamental fairness. U.S. Attorney General regulations promulgated pursuant to Section 1115(b) of SORNA provide that foreign convictions have been obtained with sufficient safeguards for fundamental fairness and due process if the U.S. State Department in its country reports on human rights practices has concluded that an independent judiciary generally enforced a right to a fair trial during the year of the conviction. The U.S. State Department's report on human rights practices for Germany stated that Germany did generally enforce a right to a fair trial in the year 2006, and therefore PENDLETON's 2006 conviction in Germany for sexual abuse of a minor qualified him as a sex offender under the Adam Walsh Act.

10. By virtue of his convictions in New Jersey and Germany, the Adam Walsh Act requires PENDLETON to register in any jurisdiction in which he resides, where he is an employee, and/or where he is a student, and not later than 3 business days after each change of name, residence, employment, or student status, he must appear in person in at least one jurisdiction involved and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. *See* 18 U.S.C. § 2250(a); 42 U.S.C. §§ 16911 & 16913.

11. PENDLETON was deported from Germany, and re-entered the United States on January 21, 2008, arriving at John F. Kennedy Airport in the state of New York. During a secondary customs inspection, PENDLETON told an agent from the Bureau of Immigrations Customs Enforcement (ICE) that he would likely be residing at                    Wilmington, Delaware.

12. Since his return from Germany, PENDLETON obtained a Delaware identification card, using the address                    Wilmington, Delaware.

13. On or about February 4, 2008, your affiant approached                    Wilmington DE and made contact with an individual who informed your affiant that she has resided at                    Wilmington DE full time since August, 2002. The resident of that

... ..... your affiant .. ... .. .  phone numbers where PENDLETON could be reached, and a cellular phone,           . The number           is a published number listed at the address           Philadelphia PA, 19143.

14. On or about March 4, 2008, the resident of           , Wilmington DE called your affiant and indicated that she had received a postcard from PENDLETON from San Francisco in which he asked to pick up his mail upon his return.

15. On March 4, 2008, PENDLETON applied for a new passport and in the passport application, PENDLETON stated that his permanent address is           Wilmington, DE. In the application, PENDLETON provided a statement as to the circumstances of how he lost his passport and his reasons for applying for a new one. In the application, PENDLETON stated that he likely lost his passport when he was in Oakland, California on February 14, 2008, and that he was in San Jose, California on February 23, 2008. PENDLETON therefore admitted to being present in California for at least ten days, of which six were business days.

16. On March 7, 2008, the resident of .           told your affiant that PENDLETON had contacted her to pick up his mail. The resident later told your affiant, that PENDLETON was coming at 4pm on March 10, 2008. The resident further stated that PENDLETON told her that after picking up his mail, he would be gone for a long time.

17. At approximately 4 pm on March 10, 2008, your affiant parked outside of           Wilmington, DE, and saw PENDLETON arrive at that location shortly thereafter. Your affiant observed PENDLETON first check the mail box, and then appear to be waiting around outside the residence. Your affiant approached PENDLETON and identified myself as a Deputy United States Marshal. PENDLETON produced his Delaware identification card. PENDLETON told your affiant that his address was           Wilmington DE, but that he had lost his key and was waiting for the other occupant to come home and let him in. Your affiant asked for photo identification, at which time PENDLETON produced a U.S. Passport. At that point, your affiant asked PENDLETON if he had other documentation showing that           is his address, at which point PENDLETON produced a card with the title "Hostelling International USA" which had his name and the           s. Your affiant asked PENDLETON where he was coming from and PENDLETON stated that he had just returned from Chicago where he was visiting his son. Your affiant specified where are you coming from today, and PENDLETON indicated that he had come down from Philadelphia and was waiting to get into           ., after which time he was going to return on the train to Philadelphia. Your affiant asked where PENDLETON was staying in Philadelphia, and PENDLETON told your affiant that he was staying at a hostel because he had business in Philadelphia and it was more convenient to stay there.

18. Your affiant placed PENDLETON under arrest for failure to register as a sex offender. Your affiant asked PENDLETON his name, date of birth, and address. PENDLETON again stated that ' Wilmington, DE is his address. Your affiant gave PENDLETON his Miranda warnings, and PENDLETON indicated that he wished to speak with an attorney. PENDLETON signed a Miranda form, but then PENDLETON asked your affiant to explain the nature of the charges against him. Your affiant told him that he was arrested for failure to register as a sex offender in violation of 18 U.S.C. 2250. PENDLETON responded that he checked the Delaware website and saw that he is not required to register as a sex offender and he was aware the Delaware changed its law but that the change did not affect him.

19. At the time of his arrest, PENDLETON had a new U.S. Passport on him and told your affiant that he plans to depart for an unspecified location in Europe on Wednesday or Thursday of this week.

20. A check with the Delaware State Police Sex Offender Registry indicated no records for Thomas PENDLETON registered as a sex offender. Moreover, there is no evidence that PENDLETON attempted to contact the Delaware State Police after his return to the United States in January, 2008. Your affiant also received written confirmation from the Pennsylvania State Police that there is no record of Thomas PENDLETON registered as a sex offender in the State of Pennsylvania, as of March 11, 2008.

21. Your affiant is aware that Delaware does not require sex offenders to register if the conviction occurred before June 27, 1994, or by virtue of his foreign conviction. Your affiant is also aware, however, that PENDLETON would be required to register under Pennsylvania and California state law, as well as under the Adam Walsh Act. Moreover, when PENDLETON left Washington D.C. in May, 2005, he was required to give Washington D.C. an accurate address, and told Yolanda Stokes that he was moving to                    . Based on the above information, however, your affiant believes that PENDLETON does not actually reside at                    , Wilmington DE, but rather, he has been residing or traveling through California and Pennsylvania, each locations where he would have been required to register. Given that PENDLETON continues to falsely assert that he resides in Delaware — the one state in which he alleges that he does not need to register — your affiant believes that he is knowingly using that address as a way to evade federal and state registration requirements.

22. Additionally, even if Delaware were considered to be PENDLETON's nominal residence for purposes of the Adam Walsh Act or SORNA, PENDLETON would have an obligation to contact Delaware authorities and inform them of his most recent German conviction upon his return to the United States. Based on his interaction with consular officials while imprisoned in Germany, and his email to Yolanda Stokes of CSOSA in 2005, PENDLETON displayed substantial knowledge regarding the impact of foreign convictions on his status in the United States, and moreover, PENDLETON was specifically advised in 2006 to contact the Attorney General in any state in which he planned to reside regarding the impact of his foreign conviction. Your affiant believes, therefore, that PENDLETON was on notice that he must update his registration with Delaware, and any other state in which he resided.

William David
Deputy United States Marshal