**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal Action No. 08-59-GMS |
| THOMAS PENDLETON, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS**

**NOW COMES** the United States of America, by and through its undersigned

attorneys, and hereby responds to Defendant's Motion to Dismiss, and respectfully requests

that this Court deny the motion for the reasons that follow.

**BACKGROUND**

*A.    Procedural History*

On April 10, 2008, a federal grand jury for the District of Delaware charged the

defendant, Thomas Pendleton, with failure to register as a sex offender, in violation of 18

U.S.C. § 2250(a).  The one-count Indictment reads as follows:

> From on or about January 28, 2008, to on or about March 10, 2008, in
> the State and District of Delaware and elsewhere, THOMAS S.
> PENDLETON, defendant herein, a person required to register under Sex
> Offender Registration and Notification Act, Title 42, United States
> Code, Section 16901 et seq. ("SORNA"), having traveled in interstate
> and foreign commerce subsequent to his conviction for a sex offense, to
> wit, a conviction on or about September 30, 1992, in the state of New
> Jersey, and a conviction on or about October 16, 2006, in District Court

-1-

of Kempten, Germany, did knowingly fail to register and update a registration as required by SORNA, in violation of Title 18, United States Code, Section 2250(a).

On July 31, 2008, the Government filed a Bill of Particulars: (1) specifying that the defendant unlawfully failed to register as required by federal law in Delaware, Illinois, Maryland, Pennsylvania, and California; (2) alleging that the defendant's federal duty to register under 18 U.S.C. § 2250(a) was triggered by his conviction on or about September 30, 1992, in the state of New Jersey, and his conviction on or about October 16, 2006, in District Court of Kempten, Germany; and (3) providing specific details of the defendant's travels in interstate commerce between his deportation from Germany on January 21, 2008, and his arrest on March 10, 2008.

On August 18, 2008, the defendant filed a motion to dismiss the Indictment on three grounds: (1) that 18 U.S.C. § 2250(a) exceeds congressional authority under the Commerce Clause; (2) that Section 2250's underlying registration requirement under 42 U.S.C. § 16913 exceeds congressional authority under the Commerce Clause; and (3) that defendant was not given notice of his obligation to register under SORNA under 42 U.S.C. § 16917(b), in violation of the Due Process clause, *see Lambert v. California*, 355 U.S. 255 (1957).

### B.    *Background on the Adam Walsh Act, 18 U.S.C. § 2250(a)*

Before SORNA, national sex offender legislation called the Jacob Wetterling Act was in place, codified at 42 U.S.C. § 14071, et seq., which was initially signed into law on September 13, 1994. This Act provided federal funding to states which enacted sex offender

registration laws commonly referred to as "Megan's Laws." While the Jacob Wettlerling Act was primarily regulatory in nature, it also provided criminal penalties of up to one year for a first offense and up to ten years for subsequent offenses for sex offenders who failed to register in any state they resided, worked or was a student. See 42 U.S.C. §14072(i). By 1996, every state, the District of Columbia and the Federal Government enacted some variation of Megan's Law.

The Sex Offender Registration and Notification Act (SORNA), Title 42, United States Code, Section 16901, et seq. was enacted by Congress on July 27, 2006, to implement a comprehensive nationwide sex offender registry, and to encourage states (and other jurisdictions such as Washington D.C., U.S. territories, and tribal areas) via spending incentives to develop minimum standards for tracking and registering sex offenders . *See* 42 U.S.C.A. § 16901. "The SORNA reforms were designed to 'close potential gaps and loopholes under the old law, and generally strengthen the nationwide network of sex offender registration and notification programs.'" Department of Justice's National Guidelines for Sex Offender Registration and Notification, 72 Fed. Reg. 30,210, 30,211 (May 30, 2007).

To accomplish this purpose, SORNA takes a three-part approach. First, SORNA establishes a national program of sex offender registration, training, and operational assistance, including the establishment of a National Sex Offender Public website that includes relevant sex offender information, 42 U.S.C. §§ 16918, 16920.

Second, SORNA sets forth uniform and comprehensive standards for states in

-3-

establishing and maintaining their sex offender registries, in tracking sex offenders within their own jurisdictions, and in setting minimum state punishments for failure to register. To this end, SORNA defines the term "sex offender," 42 U.S.C. § 16911; requires states to include all "sex offenders" on their own registration roles, *see* 42 U.S.C. § 16912; details the information that the state must collect from sex offenders, *id.* § 16912(a); and establishes standards for prosecuting state law violations of the registration act, *id.* § 16913(e). *See also* 42 U.S.C. § 16918 (establishing standards for state sex offender websites). Congress gives a direct incentive for states to comply with these uniform standards by providing that any state which fails to timely comply with the SORNA standards for sex offender registration "shall not receive 10 percent of the funds that would otherwise be allocated for that fiscal year to the jurisdiction" for local law enforcement and justice assistance programs. 42 U.S.C. § 16925. *See also*, 42 U.S.C. § 3750 et seq.

Lastly, SORNA provides for criminal penalties, under the Adam Walsh Act, 18 U.S.C. § 2250, directed at sex offenders who travel in interstate or foreign commerce and fail to register as SORNA requires. Section 2250 provides, in pertinent part:

> (a) Whoever--
> (1) is required to register under the Sex Offender Registration and Notification Act;
> (2). . .(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
> Shall be fined under this title or imprisoned not more than 10 years, or both.

There are three elements to the federal sex offender registration offense. As to the first element, Section 2250(a) refers to 42 U.S.C. § 16911, a provision of SORNA which lists the predicate offenses that qualifies as a sex offenses and thus require an individual to register under federal law. To meet the second element of Section 2250(a), the government must prove that the defendant traveled in interstate or foreign commerce after the effective date of the statute, July 27, 2006.

The last element of Section 2250(a) is that the defendant knowingly failed to register in accordance with SORNA requirements. The registration requirements and procedures are primarily set forth in 42 U.S.C. § 16913, which reads as follows:

> A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.
>
> (b) Initial registration
>
> The sex offender shall initially register--
> (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
>
> (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.
>
> (c) Keeping the registration current
>
> A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this

section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) Initial registration of sex offenders unable to comply with subsection (b) of this section

The Attorney General shall have the authority to specify the applicability of the requirements of this sub-chapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

(e) State penalty for failure to comply. Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this title.

42 U.S.C.A. § 16913.

On February 28, 2007, the U.S. Attorney General issued an interim rule pursuant to

42 U.S.C. § 16913(d) announcing that SORNA applies to sex offenders convicted before

enactment of SORNA of an offense for which registration is required. See 72 F.R. 8894-01,

2007 WL 594891, codified at 28 C.F.R. § 72.3.

## ARGUMENT

### I.    Congress Had Authority Under the Commerce Clause to Enact 18 U.S.C. § 2250.

The defendant claims that Congress exceeded its Commerce Clause authority in

enacting 18 U.S.C. § 2250, and in delineating the underlying registration requirements

codified at 42 U.S.C. § 16913.

Article I, Section 8, Clause 3 of the United States Constitution gives Congress the power "[t]o regulate Commerce with Foreign Nations, and among the several states, and with the Indian tribes." Since its decision in *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937), the Supreme Court, with few exceptions, has interpreted the Commerce Clause expansively, upholding most assertions of legislative authority. The Supreme Court has held that the Commerce Clause gives Congress broad power to regulate activities substantially related to interstate commerce. *Gonzales v. Raich*, 545 U.S. 1, 17 (2005). This power enables Congress to reach even wholly intrastate conduct when that conduct is substantially related to interstate commerce. *Id.*

The Commerce Clause thus grants Congress power to regulate "three broad categories of activity": (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "those activities having a substantial relation to interstate commerce, *i.e.,* those activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558-59 (1995).

Further, statutes are presumed constitutional. *United States v. Morrison*, 529 U.S. 598, 607 (2000). A congressional enactment will only be invalidated on a plain showing that Congress exceeded its authority under the Constitution. *Id.*

1.    Section 2250(a)

Section 2250(a) creates a federal crime when an individual (1) is required to register

under SORNA; (2) travels in interstate or foreign commerce; and (3) knowingly fails to register as a sex offender as required under SORNA.[1]  Section 2250(a) thus contains an express jurisdictional trigger — the interstate travel element — that places the statute squarely within Congress' authority to regulate and protect the instrumentalities of interstate commerce, including "persons or things in interstate commerce."[2]  *Lopez*, 514 U.S. at 558 (instrumentalities of commerce include "persons or things in interstate commerce.").

In arguing that Section 2250(a) falls outside Congress's Commerce Clause authority, the defendant relies on a single precedent, *United States v. Powers*, 544 F. Supp. 2d 1331 (M.D. Fla 2008), which held that there was an insufficient nexus between Section 2250's interstate travel element and a defendant's failure to register.  But *Powers* goes against the weight of precedent which has squarely held that no additional "nexus" is required when Congress is directly regulating the instrumentalities of interstate commerce.  *See United*

---

[1] Section 2250(a)(2)(A) creates an alternative to the travel prong if the defendant was convicted of a prior sex offense under Federal law, the law of District of Columbia, U.S. territories or tribal law.  This prong of Section 2250 is not at issue in this case.

[2] Alternatively, the Government submits that Section 2250(a) is constitutional because the regulation of sex offenders is an activity that substantially affects interstate commerce as defined under the third *Lopez* prong.  The following is a non-exhaustive list of courts that have found that Section 2250 falls under the third *Lopez* prong:  *United States v. Utesch*, No. 07-105, 2008 WL 656066, at *14 (E.D. Tenn. Mar.6, 2008); *United States v. Holt*, No. 07-0630, 2008 WL 1776495, at *3 (S.D. Iowa Apr.14, 2008); *United States v. Hacker*, No. 07-243, 2008 WL 312689, at *2 (D. Neb. Feb.1, 2008); *United States v. Dixon*, No. 07-72, 2007 WL 4553720, at *5 (N.D. Ind. Dec.18, 2007); *United States v. Brown*, No. 07-485, 2007 WL 4372829, at *2-3 (S.D.N.Y. Dec.12, 2007); May, 2007 WL 2790388, at *7; *United States v. Madera*, 474 F.Supp.2d 1257, 1265 (M.D. Fla. 2007).  As the statute clearly falls under the second *Lopez* prong, the regulation of the instrumentalities of interstate commerce, the Government will not now expand on this argument.

*States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007); *United States v. Gil*, 297 F.3d 93, 100 (2d Cir. 2002) (holding that a showing that a regulated activity substantially affects interstate commerce is not needed when Congress regulates activity defined by the first two *Lopez* categories). *Cf. United States v. McAllister*, 77 F.3d 387, 389-90 (11th Cir. 1996) (requiring only a "minimal nexus" between a jurisdictional element and the other elements of the criminal provision).

In *Lopez*, the Supreme Court held that Congress exceeded its interstate commerce powers when it enacted the Gun-Free School Zone Act, Title 18, United States Code, Section 922(q)(1)(A) because the Act did not regulate a commercial activity and did not contain a requirement that the possession of a firearm in a school zone be connected in any way to interstate commerce. *Lopez*, 514 U.S. at 551. This Act made it a federal offense "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." *Id.* at 551 (quoting Title 18, United States Code, Section 922(q)(1)(A)).

But unlike the statute struck down by *Lopez*, Section 2250(a) expressly limits its scope to those offenders who have previously traveled in interstate commerce and fail to register as required by SORNA, and thus meets *Lopez*'s standards for a valid exercise of Commerce Clause authority. Indeed, Section 2250(a)'s travel element is analogous to the jurisdictional element in the federal firearm's provision, 18 U.S.C. § 922(g), which requires no specific link between the firearm's movement in interstate commerce and the defendant's illegal

possession of it.  Courts of appeals, including the Third Circuit, have universally upheld Section 922(g), post-*Lopez*, as a valid exercise of the Commerce Clause power.  *See United States v. Singletary*, 268 F.3d 196, 205 (3d Cir. 2001) (reaffirming the constitutionality of 18 U.S.C. § 922(g)(1) and citing eight sister circuits concurring in this result).  As with the federal firearm legislation, Section 2250(a) is constitutional because it targets only those sex offenders who have traveled in interstate commerce.

Thus the *Powers* rationale has been rejected by every other district court that has considered a Commerce Clause challenge to Section 2250(a), including by another district judge in the same district, who stated:

> [*Powers*] gave only cursory treatment of the reasoning of this Court and a number of others that have upheld SORNA's constitutionality: that the enactment of SORNA was a valid use of Congress' power to "protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." SORNA's jurisdictional element brings the Act squarely within *Lopez*'s second prong.

*United States v. Mason*, 2008 WL 1882255, at *2 (M.D. Fla. April 24, 2008).  *Powers*, therefore, is not only a minority view, it stands alone.  Over 75 courts have squarely held that Section 2250 falls within the Commerce Clause authority either because it regulates the instrumentalities of interstate commerce or because the regulation of sex offenders has a substantial affect on interstate commerce.  *See, e.g., United States v. May*, — F.3d —, 2008 WL 2917766, at *8-9 (8th Cir. July 31, 2008); *United States v. Shenandoah*, 2008 WL 3854454, at *4 (M.D. Pa. Aug. 20, 2008); *United States v. Zuniga*, No. 07-3156, 2008 WL

2184118, at *17-19 (D.Neb. May 23, 2008); *United States v. Cochran*, No. 08-0018, 2008

WL 2185427, at *2 (E.D. Okla. May 23, 2008); *United States v. David*, No. 08-11, 2008 WL

2045830, at *8-9 (W.D.N.C. May 12, 2008); *United States v. Ditomasso*, 552 F.Supp.2d 233,

— (D.R.I.2008); *United States v. Craft*, No. 07-3168, 2008 WL 1882904, at *8-11, 19-21 (D.

Neb. Apr. 23, 2008); *United States v. Howell*, No. 07-2013, 2008 WL 313200, at *8 (N.D.

Iowa Feb.1, 2008); *United States v. Dixon*, No. 07-0072, 2007 WL 4553720, at *5 (N.D. Ind.

Dec.19, 2007); *United States v. Elliott*, No. 07-14059, 2007 WL 4365599, at *2-3 (S.D. Fla.

Dec.13, 2007); *United States v. Cardenas*, 2007 WL 4245913, at *12 (S.D. Fla. Nov. 29,

2007); *United States v. Pitts*, No. 07-0157, 2007 WL 3353423, at *4-5 (M.D. La. Nov. 7,

2007) (slip copy); *United States v. Beasley*, No. 07-115, 2007 WL 3489999, at *9 (N.D. Ga.

Oct.10, 2007) (slip copy); *United States v. Gonzales*, 2007 WL 2298004, at *9 (N.D. Fla.

Aug. 9, 2007) (slip copy); *United States v. Muzio*, 2007 WL 1629836, at *4 (E.D. Mo. June

4, 2007) (slip copy); *United States v. Hinen*, 487 F. Supp.2d 747, 757-58 (W.D. Va. 2007);

*United States v. Templeton*, 2007 WL 445481, at *4 (W.D. Okla. Feb. 7, 2007) (slip copy).

This Court should join with the legion of courts which have held that Congress was

within its Commerce Clause authority in enacting Section 2250(a).

2.      42 U.S.C. § 16913

The defendant makes a related Commerce Clause challenge, contending that Section

2250(a)'s underlying registration provision, 42 U.S.C. § 16913, is beyond the Commerce

Clause authority because Section 16913 does not itself require proof of interstate travel.

The third prong of Section 2250(a) is that the defendant knowingly failed to register as a sex offender as required under SORNA. Section 16913 is the provision of SORNA which delineates the sex offender registration requirements. Pursuant to Section 16913, a sex offender must register in any jurisdiction in which he resides, where he is an employee, and/or where he is a student, by appearing not later than 3 business days after each change of name, residence, employment, or student status in person in at least one jurisdiction involved and to inform the relevant jurisdiction(s) of any changes in the required information. See 18 U.S.C. § 2250(a); 42 U.S.C. §§ 16911 & 16913.

In forwarding this claim, the defendant relies on *United States v. Waybright*, — F. Supp. 2d —, 2008 WL 2380946, at *11 (D. Mont. June 11, 2008). *Waybright* began by finding that Section 2250(a) as a whole was within the scope of the Commerce Clause, after concluding that it fits within both the first and second *Lopez* categories because it requires sex offenders to use the channels of interstate commerce or travel in interstate commerce before subjecting them to criminal penalties. *Id.* at *5. But the defendant in *Waybright* claimed that even if Section 2250(a) is a valid exercise of Congress' Commerce Clause power, he cannot be convicted under the statute because he should not have been required to register under Section 16913 in the first place. The *Waybright* court agreed and reasoned as follows:

> A conviction for failure to register as a sex offender is predicated upon proof that the defendant was required to register under § 16913. 18 U.S.C. § 2250(a). Section 16913, in turn, requires all sex offenders in the United States to register. Unlike § 2250(a), its requirements are not

> limited to only those sex offenders who travel in interstate commerce.
> By its terms, § 16913 does not regulate the use of the channels of
> interstate commerce or the instrumentalities of interstate commerce.

*Id.* at *7. The opinion continued by finding that Section 16913 also did not regulate activities

which substantially affect interstate commerce under the third *Lopez* prong because the

movement of sex offenders is a non-economic activity, and "any effect on interstate

commerce from requiring sex offenders to register is too attenuated to survive scrutiny under

the Commerce Clause." *Id.* at *7-*8.

*Waybright* analyzed the constitutionality Section 16913 in isolation, requiring that it

stand alone for purposes of constitutional analysis. But the majority of courts have disagreed

with this approach, and have instead treated Section 16913 "as [an] interrelated component[]

of the larger whole of SORNA" including Section 2250(a). *United States v. Van Buren*, No.

3:08-CR-198, 2008 WL 3414012, at *12 (N.D.N.Y 2008). The majority and more

compelling approach has therefore been to find that 18 U.S.C. § 2250(a) and 42 U.S.C.

§ 16913 "are components of a symbiotic statutory scheme in which there is no criminal

penalty unless there is a failure to register and, conversely, failure to register cannot be

enforced without a criminal penalty." *United States v. Fuller*, 5:07-CR-46 (N.D.N.Y.),

March 27, 2008 Mem.-Dec. & Ord., p. 10; *see also United States v. Hahn*, No. 2:08-00002,

Memorandum Opinion (M.D. Tn. August 22, 2008) ("The court is convinced that 42 U.S.C.

§ 16913 and 18 U.S.C. § 2250(a) must be analyzed together"); *Van Buren, Jr.*, 2008 WL

3414012, at *13.

-13-

In other words, while Section 16913 explains and delineates the federal sex offender registration requirements, it does not contain any enforcement mechanism. Section 2250(a) is the sole enforcement mechanism for failure to register, and it only applies if the defendant previously traveled in interstate commerce. Thus, the constitutionality of Section 16913 should not be assessed alone, but only as it functions as an element of Section 2250(a).

An interstate nexus is not required for every element of a crime. It is sufficient if the criminal statute contains a sufficient jurisdictional "hook," as Section 2250(a) clearly does. *Morrison*, 529 U.S. at 611-12. The defendant's facial challenge to Section 2250(a)'s incorporation of Section 16913, should therefore fail. *See Shenandoah*, 2008 WL 3854454, at *4 ("Because federal prosecution under § 2250 does not reach the purely intrastate movement of sex offenders who fail to comply with registration requirements, the court finds that SORNA does not contravene the Commerce Clause."); *United States v. Trent*, 2008 WL 2897089, at *5 (S.D. Ohio July 24, 2008) (rejecting a facial challenge to § 16913 after concluding that "Section 16913(a) can be validly applied to him, given that he is alleged to have traveled in interstate commerce"); *United States v. Akers*, No. 3:07-CR-00086(01)RM, 2008 WL 914493, at *3 (N.D. Ind. April 3, 2008) ("SORNA focuses on sex offenders who travel between states and does not purport to reach offenders who remain within a single state, thus providing the jurisdictional basis and interstate nexus essential to bring SORNA within Congressional authority."). *Cf. Sabri v. United States*, 541 U.S. 600, 609 (2004) (observing that facial challenges to constitutionality of statutes should be "discouraged"

-14-

particularly where a defendant essentially mounts an "overbreadth" claim that the statute is unconstitutional, not in its application to his own case, but in theoretical application to others).

But even if this Court does assess the constitutionality of Section 16913 as a stand-alone provision, it should find that Section 16913 is a valid use of Congress's power under the Necessary and Proper Clause. The Necessary and Proper Clause grants Congress the power to "make all Laws which shall be necessary and proper" for executing its other enumerated powers. U.S. Const. art. I, § 8, cl. 18.

In conjunction with the Commerce Clause, the Necessary and Proper Clause permits Congress to "regulate even those intrastate activities that do not themselves substantially affect interstate commerce," so long as the Congressional enactment is "necessary to make a regulation of interstate commerce effective." *Gonzales*, 545 U.S. at 35 (Scalia, J., concurring). To satisfy the Necessary and Proper Clause, the means chosen need not be "narrowly tailored" to attain the desired end, but must only "bear a rational relationship to a permissible constitutional end." *See Hankins v. Lyght*, 441 F.3d 96, 106 (2d Cir. 2006); *see also Jinks v. Richland County*, 538 U.S. 456, 462 (2003) ("[W]e long ago rejected the view that the Necessary and Proper Clause demands that an Act of Congress be ' absolutely necessary' to the exercise of an enumerated power.").[3]

---

[3]*Waybright*, took a narrow approach to the Necessary and Proper Clause, focusing on whether the regulation at issue "is *necessary* to make a regulation of interstate commerce effective." *Id.* at *9 (emphasis added) (citing *Raich*, 545 U.S. at 35, (Scalia, J.,

SORNA's registration provision are plainly adapted to meet the Congressional purpose of monitoring sex offenders who transgress state lines. The legislative history reflects that the SORNA is a comprehensive scheme directed at filling the gaps in state registration provisions, and in particular, is directed at those offenders who travel in interstate commerce to avoid detection.[4] In enacting SORNA, Congress made specific findings in this regard:

> The most significant enforcement issue in the sex offender program is that over 100,000 sex offenders, or nearly one-fifth in the Nation are "missing," meaning that they have not complied with sex offender registration requirements. This typically occurs when the sex offender moves from one State to another. When a sex offender fails to register in a State in which he or she resides, there is no effective system by which the States can notify each other about the change in a sex offender's status. . . . To ensure compliance,... [s]ex offenders who fail to comply will face felony criminal prosecution. More importantly, in order to address the problem of sex offenders, sex offenders will now face Federal prosecution. . . .The combination of incentives for the sex offender to comply, enhanced criminal penalties, and additional law enforcement resources to focus on this problem will reduce the overwhelming number of non-complying or "lost" sex offenders in our communities.

----

concurring)). There is no requirement, as *Jinks* made clear, that the regulation be "absolutely necessary" to the exercise of Commerce Clause (or other) authority. Rather, the proper standard, which *Waybright* did not apply, is whether the statute is "plainly adapted to that end." *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 421, 4 L.Ed. 579 (1819).

[4]The defendant's own case exemplifies the importance of such a nationwide scheme. As the bill of particulars sets forth, the defendant moved in interstate commerce ten times between January 28, 2008 and his arrest on March 10, 2008, stopping in at least six states.

H.R. Rep. No. 109-218, at 26 (2005).

Given these findings and reviewing the complete SORNA provision, the district court

in *United States v. Torres*, 2008 WL 3974307, at \*12 (W.D. Tex. August 21, 2008),

observed:

> the purpose of SORNA is "to protect the public from sex
> offenders and offenders against children," by "establish[ing] a
> comprehensive national system for the registration of those
> offenders[.]" 42 U.S.C. § 16901. This national system of sex
> offenders is more than the merely sum of its parts, and can only
> achieve its ends if sex offenders who cross state lines are
> required to register in every state to which they move to reside,
> work, or seek an education. . . SORNA requires state registration
> as a necessary and proper part of a comprehensive national
> scheme to prevent sex offenders from traveling in interstate
> commerce to avoid detection and move amongst the individual
> programs.

*See also United States v. Thomas*, 534 F. Supp.2d 912, 922 (N.D. Iowa 2008) ("Congress

may have determined that it was unworkable, as a practical matter, to devise and enforce a

sex-offender registration system that could monitor only those sex offenders who traveled

in interstate commerce.").

Section 16913 is also a valid statute under the Spending Clause in combination with

the Necessary and Proper Clause. As the Supreme Court held in *Sabri v. United States*,

"Congress has authority under the Spending Clause to appropriate federal moneys to promote

the general welfare, Art. I, § 8, cl. 1, and it has corresponding authority under the Necessary

and Proper Clause, Art. I, § 8, cl. 18, to see to it that taxpayer dollars appropriated under that

power are in fact spent for the general welfare . . . ." 541 U.S. at 605.

Here, SORNA has sought to establish a uniform and comprehensive system of tracking, registering, and prosecuting sex offenders nationwide. To accomplish this end, it has developed a national registration database, established funding incentives for the states to adopt minimum standards for their sex offender registration programs, and has established a federal crime, Section 2250(a), to prosecute offenders who travel in interstate commerce and knowingly fail to register. A defendant's violation of registration requirements — state and federal — would impact the federal investment in the comprehensive nationwide sex offender registry, and its investment into parallel state programs. Section 16913's establishment of minimum standards for sex offender registration is therefore an integral piece of Congress's scheme, and is valid as incorporated into 18 U.S.C. § 2250(a), and under Congress's authority under the Commerce, Spending, and the Necessary and Proper Clauses.

**II.    Section 2250(a) Does Not Require the Defendant to be Given Specific Notice; and the Defendant, at any rate Received Fair Notice That Comports with Due Process.**

The defendant makes related statutory and constitutional claims that he lacked fair notice of his obligation to register. As a statutory matter, the defendant asserts that 42 U.S.C. § 16917 imposed a duty on the Attorney General to prescribe rules to notify sex offenders of their registration obligation. As a constitutional matter, the defendant asserts that if he was not actually notified about the SORNA registration requirements, then he lacked fair notice under the Supreme Court's decision *Lambert v. California*, 355 U.S. 225 (1957).

In essence, the defendant's notice claims boil down to an "ignorance of the law

-18-

defense." The defendant's statutory and constitutional notice claims are without merit for the reasons that follow.

### A.    *Receipt of Notice is Not an Element of an 18 U.S.C. § 2250(a) Offense.*

Section 16917 is entitled "Duty to notify sex offenders of registration requirements and to register," and provides:

> (a) In general
>
> An appropriate official shall, shortly before release of the sex offender from custody, or, if the sex offender is not in custody, immediately after the sentencing of the sex offender, for the offense giving rise to the duty to register--
> (1) inform the sex offender of the duties of a sex offender under this subchapter and explain those duties; .
> (2) require the sex offender to read and sign a form stating that the duty to register has been explained and that the sex offender understands the registration requirement; and
> (3) ensure that the sex offender is registered.
>
> (b) Notification of sex offenders who cannot comply with subsection (a) of this section
>
> The Attorney General shall prescribe rules for the notification of sex offenders who cannot be registered in accordance with subsection (a) of this section.

First, the defendant incorrectly asserts that the Attorney General has failed to prescribe notice rules required under 42 U.S.C. § 16917(b). The Attorney General issued proposed notification guidelines on May 30, 2007, which include detailed provisions for the initial registration of sex offenders. The National Guidelines for Sex Offender Registration and Notification, 72 Fed.Reg. 30,210, 30,227- 30,229 (May 30, 2007).

-19-

These regulations, along with SORNA's statutory scheme, made clear that Section 16917 does not give the defendant a statutory right to notification of his registration duties. Rather, Section 16917 is one of many SORNA provisions which establish minimum and uniform standards for jurisdictions, including state governments, seeking to implement SORNA. SORNA requires states and other jurisdictions to establish the notice provisions similar to those set forth in Section 16917, along with implementing a host of other standards and requirements, to receive full federal funding.

Nothing in 18 U.S.C. § 2250(a), or the rest of SORNA, however, indicates that Congress intended a state's compliance with § 16917 to be a precondition to prosecution for knowing failure to register. In particular, Section 2250(a) – the offense with which the defendant is charged – does not require proof that the defendant was specifically notified of SORNA or his federal obligation to register. *See Zuniga*, 2008 WL 2184118, at *15 ("[R]eceipt of notice as required under § 16917(a) is not an element of a 18 U.S.C. § 2250 offense."); *see also United States. v. Samuels*, 543 F. Supp.2d 669, 673 (E.D.Ky. 2008); *United States v. Dixon*, 2007 WL 4553720, at * 4 (N.D. Ind. 2007); *United States v. Lovejoy*, 516 F. Supp.2d 1032, 1037 (D.N.D. 2007).

Rather, Section 2250(a) requires that the defendant "knowingly" fail to register. Courts have repeatedly held that a defendant's knowledge of his sex offender registration obligations under state law is sufficient to establish a knowing failure to register under Section 2250(a) and to satisfy any *Lambert*-type Due Process concerns. *See Torres*, 2008

WL 3974307, at *16 ("[T]he Court agrees with the courts above and almost every other United States District Court addressing this issue in holding that 'actual notice of the federal requirement was not necessary for purpose of the Due Process Clause and that knowledge of state reporting requirements sufficed.'" (quoting *United States v. Oakley*, No. 8:-7CR437, 2008 WL 2986256, at *5 (D. Neb. July 31, 2008) and citing cases)); *see also Shenandoah*, 2008 WL 3854454, at *8 (citing cases).

For that matter, a defendant could become aware of his registration obligation in any number of ways. In this case, the Government expects to present evidence that the defendant had previously registered as a sex offender in Washington D.C., had extensively researched his registration obligations, and was in fact aware that he was evading his obligation to register at the time of his arrest. The Government thus expects the evidence at trial to be sufficient to establish that the defendant knowingly failed to register as a sex offender under Section 2250(a).

### B.   *The Defendant Received Fair Notice of His Obligations to Register.*

The defendant next asserts that "SORNA radically changes the landscape of sex offender registration laws," and that he lacked fair notice of these changes as required by Due Process, as set forth in *Lambert*, 355 U.S. 225.

*Lambert* dealt with Los Angeles's felon registration program in the 1950s. In *Lambert*, the Supreme Court held that a defendant's conviction under Los Angeles' felon registration ordinance violated principles of due process because there was no evidence that

the defendant possessed actual knowledge of the duty to register. It found "that actual knowledge of the duty to register or proof of the probability of such knowledge" is required "where a person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case." *Id.* at 228-29.

But *Lambert* "carve[d] out a very limited exception to the general rule that ignorance of the law is no excuse," *United States v. Hutzell*, 217 F.3d 966, 968 (8th Cir.2000), which applies only when (1) the defendant's conduct was "wholly passive,"; (2) the defendant was "unaware of any wrongdoing" (i.e., the default was "entirely innocent"); and (3) there is an absence of "circumstances that should alert the doer to the consequences of his deed"-or, more specifically, an absence of circumstances that "move [him] to inquire as to the necessity of registration." *Lambert*, 355 U.S. at 228-29.

None of these elements are met here. The first two elements are factual questions specific to each defendant. In this case, the Government expects that the trial evidence will show that the defendant's attempts to evade registration were far from "wholly passive," but rather that the defendant took active steps to move between states and make false representations about his residence to avoid registering. Moreover, the Government expects to present evidence of the defendant's consciousness of guilt, showing that he was aware of his wrongdoing.

But the defendant's situation also fails the third *Lambert* element because there were a host of circumstances that should have alerted the defendant to inquire about the his sex

offender registration requirements. State and federal sex offender registration laws have been in place for years, and the defendant in this case had been subject to them, at least since his release from New Jersey prison in 2001. Contrary to the defendant's claim that SORNA "radically" changes the registration requirements for sex offenders, the Government would show at trial that the defendant was himself subject to registration obligations similar to SORNA while under the supervision of the District of Columbia – including a requirement that he report to each locality in which he was traveling within 72 hours (three days) of arriving.

That SORNA was passed during the defendant's incarceration in Germany is of little consequence and does not justify the dismissal of the Indictment. The defendant had an opportunity and indeed an obligation to inquire about his registration obligations upon his return to the United States, and chose not to do so. Section 2250(a) requires the Government to prove at trial whether the defendant had actual knowledge of an obligation to register as a sex offender under state or federal law. This element is a factual question for the jury, and not a basis for dismissal of the Indictment.

## Conclusion

For these reasons, the Government respectfully requests that the court deny defendant's motion to dismiss.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

BY: _____

Ilana H. Eisenstein
Assistant United States Attorney

Dated: September 2, 2008