IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Criminal Action No. 08-59-GMS |
| THOMAS PENDLETON, | ) ) ) | |
| Defendant. | ) ) | |

---

Eleni Kousoulis, Assistant Federal Public Defender, Federal Public Defender's Office, Wilmington, Delaware. Attorney for the Defendant.

Ilana H. Eisenstein, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for the Prosecution.

---

## OPINION

February 10, 2009
Wilmington, Delaware


SLEET, Chief Judge.

## I. INTRODUCTION

Presently before the court is defendant Thomas Pendleton's ("Pendleton") motion to dismiss the indictment against him. (D.I. 27.) The motion challenges the constitutionality of the Sex Offender Registration and Notification Act ("SORNA"). For the reasons that follow, the court will deny this motion.

## II. BACKGROUND

### A. Procedural History

On April 10, 2008, Pendleton was indicted by a federal grand jury for failure to register as a sex offender, in violation of SORNA. (D.I. 12.) Specifically, the one-count indictment alleges that:

> From on or about January 28, 2008, to on or about March 10, 2008, in the State and District of Delaware, and elsewhere, Thomas S. Pendleton, a person required to register under Sex Offender Registration and Notification Act, Title 42, United States Code, Section 16901 *et seq.* ("SORNA"), having traveled in interstate and foreign commerce subsequent to his conviction for a sex offense, a conviction on or about September 30, 1992, in the state of New Jersey, and a conviction on or about October 16, 2006, in District Court of Kempten, Germany, did knowingly fail to register and update a registration as required by SORNA, in violation of Title 18, United States Code, Section 2250(a).

(Indictment at 1.) On April 17, 2008, Pendleton entered a plea of not guilty to the indictment.

On July 31, 2008, the government filed a bill of particulars alleging that: (1) the defendant failed to register as required by federal law in Delaware, Illinois, Maryland, Pennsylvania, and

California; (2) the defendant's duty to register under 18 U.S.C. § 2250(a) was triggered by his conviction on or about September 30, 1992, in the state of New Jersey, and his conviction on or about October 16, 2006, in District Court of Kempten, Germany; and (3) the defendant traveled in interstate commerce between his deportation from Germany on January 21, 2008,[1] and his arrest on March 10, 2008. (D.I. 23.)

On August 18, 2008, Pendleton filed the instant motion to dismiss the indictment. (D.I. 27.) Briefing on the motion to dismiss was completed on September 9, 2008.[2] The court heard oral argument on the motion on December 1, 2008. (D.I. 33.)

### B. SORNA

On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act of 2006 (the "Adam Walsh Act"). Pub. L. No. 109-248, 120 Stat. 587 (July 27, 2006). Title I of the Adam Walsh Act codified SORNA. 42 U.S.C. § 16911 *et seq.* The stated purpose of SORNA is "to protect the public from sex offenders and offenders against children" by establishing "a comprehensive national system" for the registration of sex offenders. *Id.* at § 16901. In addition, SORNA encourages states to develop certain "minimum standards" for tracking and registering sex offenders. *Id.* at § 16901. SORNA is "designed to close potential gaps and loopholes . . . and strengthen the nationwide network of sex offender registration and notification programs." National Guidelines for Sex Offender Registration and Notification, 72 Fed. Reg. 30,210, 30,211 (United States Department of Justice May 30, 2007) (citations omitted). In addition, SORNA is intended "to

---

[1] The defendant does not contest that he was deported from Germany to the United States on January 21, 2008. (*See* D.I. 27 at 8.)

[2] Both the defendant and the government each filed supplemental papers on the motion on December 19, 2008 (D.I. 36) and January 8, 2009 (D.I. 37), respectively.

3

prevent sex offenders from being lost to tracking efforts as they travel from state to state." *United States v. Ditomasso*, 552 F. Supp. 2d 233, 244 (D.R.I. 2008) (citing 152 Cong. Rec. at 8013).

SORNA's statutory scheme consists of three key provisions: (1) a nationwide registration provision; (2) a federal funding provision; and (3) a criminal provision. The nationwide registration provision establishes a national program of sex offender registration. *See* 42 U.S.C. §16913 ("Section 16913"). Specifically, this provision requires sex offenders to register where they reside, work, and attend school. *Id.* The federal funding provision prescribes uniform and comprehensive standards for states in establishing and maintaining their sex offender registries, in tracking sex offenders within their own jurisdictions, and in setting minimum penalties for failure to register. *See* 42 U.S.C. § 16911 ("Section 16911"). This provision provides incentives for states to comply with uniform SORNA standards by, among other things, conditioning federal funding for local law enforcement programs on compliance.[3]

SORNA's criminal provision establishes criminal penalties for sex offenders who travel in interstate or foreign commerce and fail to register as SORNA requires. *See* 18 U.S.C. § 2250(a) ("Section 2250(a)").[4] Specifically, for a defendant to be convicted under SORNA's criminal

---

[3] *See* 42 U.S.C. § 16925 (providing that any state that fails to comply with SORNA standards for sex offender registration "shall not receive 10 percent of the funds that would otherwise be allocated for that fiscal year to [that] jurisdiction").

[4] If a sex offender fails to register under 42 U.S.C. § 16913, he or she can be prosecuted under 18 U.S.C. § 2250. Specifically, 18 U.S.C. § 2250 provides, in relevant part, that:

(a) In general. Whoever--
    (1) is required to register under the Sex Offender Registration and Notification Act;
    (2)
        (A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under

provision, the government must prove that he or she: (1) is a "sex offender" [5] required to register in some jurisdiction; (2) "traveled in interstate or foreign commerce" after the effective date of the statute; and (3) "knowingly failed to register" in accordance with SORNA's registration requirements.[6] *Id.* Moreover, § 2250(a) authorizes a 10-year prison sentence for anyone who is

---

Federal law (including the Uniform Code of Military Justice [10 U.S.C. §§ 801 *et seq.*]), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
    (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
    (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
shall be fined under this title or imprisoned not more than 10 years, or both.

[5] The Act defines the term "sex offender" as "an individual who was convicted of a sex offense." 42 U.S.C. § 16911(1). Sex offenses include criminal offenses that have an element involving a sexual act or sexual contact with another and certain specified offenses against minors. *Id.* § 16911(5)(A). SORNA classifies sex offenders into three different tiers based on the nature of their crime of conviction. *Id.* § 16911(2) - (4). A sex offender's classification determines the number of years the offender must remain registered after conviction and the frequency with which the offender's information is verified. *Id.* §§ 16915-16916.

[6] SORNA's underlying registration requirements and procedures are set forth in 42 U.S.C. § 16913, which reads as follows:

    (a) In general. A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

    (b) Initial registration. The sex offender shall initially register--
        (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
        (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

    (c) Keeping the registration current. A sex offender shall, not later

subject to the Section 16913 registration requirement and travels in interstate or foreign commerce without registering.

On February 28, 2007, the U.S. Attorney General issued an interim rule regarding SORNA.[7] This rule made SORNA's requirements applicable "to all sex offenders, including those sex offenders convicted of the offense for which registration is required prior to [SORNA's] enactment." 28 C.F.R. § 72.3.[8]

## III. PARTIES' CONTENTIONS

The defendant moves to dismiss the indictment in this case on three constitutional grounds.

---

than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) Initial registration of sex offenders unable to comply with subsection (b). The Attorney General shall have the authority to specify the applicability of the requirements of this title to sex offenders convicted before the enactment of this Act [enacted July 27, 2006] or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b).

(e) State penalty for failure to comply. Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this title.

[7] Congress delegated the authority to promulgate regulations regarding SORNA to the U.S. Attorney General. *See* 42 U.S.C. § 16913(d).

[8] *See also United States v. Kapp*, 487 F. Supp. 2d 536, 541 (M.D. Pa. 2007) (noting that the U.S. Attorney General's interim rule made it "undisputably clear" that SORNA applies to sex offenders regardless of when they were convicted).

First, he contends that SORNA's criminal provision, § 2250(a), is invalid because it exceeds congressional authority under the Commerce Clause. Second, he contends that SORNA's underlying registration requirement, § 16913, is invalid because it, too, exceeds congressional authority under the Commerce Clause. Third, he contends that his prosecution under SORNA violates the Due Process Clause because he was not given notice of any obligation to register.

The government, on the other hand, contends that the defendant's motion is without merit and should be denied. It maintains that both SORNA's criminal provision and its underlying registration requirement are constitutionally valid. Specifically, the government contends that SORNA falls well within the constitutional boundaries of the Commerce Clause because, among other things, it has a sufficient nexus to interstate commerce. The government further contends that the defendant's lack of notice argument fails because the Due Process Clause does not require that he be given specific notice of his obligation to register under SORNA.

## IV. LEGAL STANDARD

The Third Circuit standard for evaluating the sufficiency of an indictment provides that an indictment is sufficient "so long as it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (citations omitted). In making this determination, the court must assume that the allegations in the indictment are true. *See United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990). The court must then "examine the statutes at issue as applied to the facts alleged in the indictment, and determine whether the defendant's conduct, as charged, reflects a proper interpretation of criminal

activity under the relevant criminal statutes." *United States v. Shenandoah*, 572 F. Supp. 2d 566, 571 (M.D. Pa. 2008) (citations and brackets omitted).

Federal statutes are presumed constitutional. *United States v. Morrison*, 529 U.S. 598, 607 (2000). Therefore, a congressional enactment will only be invalidated on a "plain showing" that Congress exceeded its authority under the U.S. Constitution. *Id.* In engaging in the review of the constitutionality of a statute as to whether its enactment constituted an appropriate exercise of Congress' Commerce Clause authority, a court must ascertain whether Congress "could rationally conclude that the regulated activity substantially affects interstate commerce." *United States v. Rodia*, 194 F.3d 465, 469 (3d Cir. 1999).

## V. DISCUSSION

Having considered the record in this case, the parties' arguments and briefing, and the applicable law, the court concludes that: (a) SORNA does not exceed Congress' authority under the Commerce Clause, and that both its criminal and nationwide registration provisions are valid, and (b) the defendant's prosecution under SORNA does not violate his rights under the Due Process Clause. The court's reasoning is as follows.

### A. The Commerce Clause

The Commerce Clause permits Congress to "regulate Commerce with foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3. Specifically, it empowers Congress to regulate the following three categories of activities: (1) "the use of the channels of interstate commerce," (2) the use of "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities," and (3) "those activities having a substantial relationship to interstate commerce." *United States v. Lopez*, 514 U.S.

549, 558-59 (1995); *Gonzales v. Raich*, 545 U.S. 1, 16-17 (2005) (same). Thus, for a regulation promulgated under Congress' commerce power to be valid, it must have a sufficient "nexus" with interstate commerce. *Lopez*, 514 U.S. at 516.

In exercising its commerce power, it is well-established that Congress is able to reach even wholly intrastate conduct when that conduct is "substantially related" to interstate commerce. *Gonzales*, 545 U.S. at 17. In addition, Congress has the ability "[t]o make all Laws which shall be necessary and proper" for the accomplishment of its commerce power. U.S. Const. art. I, § 8, cl. 18.

### 1. *Whether 18 U.S.C. § 2250(a) Exceeds Congress' Authority Under the Commerce Clause*

The court finds that § 2250(a) does not exceed Congress' authority under the Commerce Clause. Pendleton argues that § 2250(a) is invalid because it lacks a sufficient nexus to interstate commerce, insofar as it fails to regulate either: (1) "the channels of interstate commerce," (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce," or (3) "activities having a substantial relationship to interstate commerce" as required by *Lopez*. (D.I. 27 at 3.) The court disagrees. Contrary to the defendant's assertion, the court concludes that § 2250(a), indeed, has a sufficient nexus to the regulation of interstate commerce.

First, the plain language of § 2250(a) contains an interstate travel element that expressly establishes a sufficient nexus to interstate commerce. That is, in order for the defendant to be convicted under SORNA, this provision requires the government to prove that he "*traveled in interstate or foreign commerce.*" *See* 18 U.S.C. § 2250(a)(B) (emphasis added). As the government correctly notes, this explicit jurisdictional element places SORNA squarely within Congress' authority to regulate both "the use of the channels of interstate commerce" and the "persons or things in interstate commerce." *Lopez*, 514 U.S. at 558-59. Thus, on its face, § 2250(a)'s "interstate or

foreign commerce" requirement implicates the first two prongs of *Lopez*. *See United States v. May*, 535 F.3d 912, 922 (8th Cir. 2008) (holding that Section 2250(a) is valid under the first two *Lopez* interstate commerce jurisdictional prongs); *United States v. Wrance*, 548 F.3d 1329, 1337 (10th Cir. 2008) (same); *United States v. Hinckley*, No. 07-7107, 2008 U.S. App. LEXIS 24989, at *38-39 (10th Cir. Dec. 9, 2008) (same).[9] This jurisdictional element clearly distinguishes SORNA from the statutes struck down by the Supreme Court in *Lopez* and *Morrison*. *See Lopez*, 514 U.S. at 562; *Morrison*, 529 U.S. 598, 611-12 (2000).

Second, there is no dispute in this case that: (1) the defendant was a "person . . . in interstate commerce," in that he traveled and relocated between various states, and that he traveled in "foreign commerce" when he was deported from Germany to the United States in January 2008; and (2) that he did so via "the use of the channels of interstate commerce."[10] Moreover, it is well-established that "Congress may impose relevant conditions and requirements on those who use the channels of interstate commerce in order that those channels will not become the means of promoting or spreading evil, whether of a physical, moral or economic nature." *United States v. Wrance*, 548 F.3d 1329, 1337 (10th Cir. 2008) (quoting *Brooks v. United States*, 267 U.S. 432, 436-37 (1925)). The plain language of § 2250(a) contains an explicit interstate travel requirement which, as applied to the

---

[9] The court need not address the third *Lopez* prong, *i.e.*, whether the regulated activity "substantially affects" interstate commerce. *See Hinckley*, 2008 U.S. App. LEXIS 24989 at *38 ("Whether such an activity has a substantial effect on interstate commerce is irrelevant, since the first and second prongs of Lopez confirm Congress' authority to regulate this type of activity."); *cf. United States v. Gil*, 297 F.3d 93, 100 (2d Cir. 2002) (holding that a finding that a regulated activity meets the third *Lopez* category is not necessary when the court finds that the activity satisfies the first two *Lopez* categories).

[10] Even assuming *arguendo* that these facts are in dispute, for purposes of the motion to dismiss, the court is, nonetheless, required to accept the factual allegations in the indictment as true. *See Besmajian*, 910 F.2d at 1154.

alleged facts in this case, establishes a sufficient nexus to interstate commerce. Section 2250(a), therefore, constitutes a proper exercise of Congress' commerce power.

Third, in concluding that Section 2250(a) constitutes a valid exercise of Congress' commerce power, the court reaches the same conclusion as a number of circuit courts that have recently addressed the issue.[11] *See May*, 535 F.3d at 921-22 (8th Cir. 2008) (rejecting the defendant's arguments challenging § 2250's validity under the Commerce Clause); *United States v. Wrance*, 548 F.3d 1329, 1337 (10th Cir. 2008) ("SORNA clearly intends to regulate interstate activity, *i.e.*, the evasion of sex offender registration requirements by sex offenders who have crossed jurisdictional lines."); *Hinckley*, 2008 U.S. App. LEXIS 24989, at *39 (10th Cir. 2008) (holding that SORNA "remains well within the constitutional boundaries of the Commerce Clause"); *United States v. Dixon*, No. 08-1438, 2008 U.S. App. LEXIS 26820, at *8 (7th Cir. Dec. 22, 2008) (finding "no merit" to defendant's contention that SORNA is not valid under the Commerce Clause). Indeed, the Seventh Circuit, the Eighth Circuit, and Tenth Circuit have all rejected Commerce Clause arguments that are nearly identical to the arguments the defendant raises here. Like the defendants in *May*, *Wrance*, *Hinckley*, and *Dixon*, the defendant here seeks to dismiss his indictment, in part, on the grounds that § 2250(a) violates the Commerce Clause. *See* D.I. 27 at 1-2. The court rejects this argument. Consistent with the reasoning of the circuit courts in the above-cited cases, this court, likewise, concludes that Section 2250(a) has a sufficient nexus to interstate commerce, insofar as it implicates the first two prongs of *Lopez*. Section 2250(a), therefore, does not exceed Congress' authority under the Commerce Clause.

---

[11] The Third Circuit, however, has not yet addressed this precise issue in the context of SORNA.

Fourth, the court is not convinced that the legal authority upon which defendant relies represents the correct view. The defendant relies upon the opinion of a district court in the Middle District of Florida, issued in the case of *United States v. Powers*, in which the court granted a defendant's motion to dismiss the indictment. *See United States v. Powers*, 544 F. Supp. 2d 1331, 1336 (M.D. Fla. 2008) (holding that Congress had exceeded its Commerce Clause authority when it enacted 18 U.S.C. § 2250(a)). In *Powers*, the district court reasoned that SORNA was invalid because there was not a "sufficient nexus" between § 2250(a)'s interstate travel element and the defendant's failure to register. *Id.* at 1336. Yet, the vast majority of district courts that have addressed this issue have reached a contrary conclusion. *See, e.g., United States v. Shenandoah*, 572 F. Supp. 2d 566, 575-76 (M.D. Pa. 2008) (noting that the "overwhelming majority" of district courts have concluded that SORNA withstands constitutional challenge) (collecting cases).[12] Instead, these courts have expressly rejected the reasoning in *Powers* -- uniformly holding that § 2250(a) falls within Congress' authority under the Commerce Clause because it satisfies at least one of the *Lopez* prongs. *Id.* at 575. Most notably, in *Mason*, another Middle District of Florida district court stated that:

> [*Powers*] gave only cursory treatment of the reasoning of this Court and a number of others that have upheld SORNA's constitutionality: that the enactment of SORNA was a valid use of Congress' power to "protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." SORNA's jurisdictional element brings the Act squarely within *Lopez*'s second prong.

*United States v. Mason*, No. 6:07-cr-52-Orl-19GJK, 2008 U.S. Dist. LEXIS 33850, at *6-7 (M.D. Fla. Apr. 24, 2008) (rejecting the rationale in *Powers*). Like the court in *Mason*, this court is not

---

[12] The defendant himself acknowledges that the view he espouses represents the "minority viewpoint" on the issue. (D.I. 27 at 4.)

persuaded that *Powers* represents the correct view.

Accordingly, the court finds that § 2250(a) does not lack a sufficient nexus to interstate commerce, and that it, therefore, constitutes a valid exercise of Congress' commerce power.

### 2. *Whether 42 U.S.C. § 16913 Exceeds Congress' Authority Under the Commerce Clause*

The court also finds that § 16913 does not exceed Congress' authority under the Commerce Clause. Relying on the opinion of the district court in *Waybright*, the defendant argues that § 16913 is unconstitutional because it does not fall within any of the three prongs proscribed by *Lopez*. *See* D.I. 27 at 5-6 (citing *United States v. Waybright*, 561 F. Supp. 2d 1154, 1163 (D. Mont. 2008)). Specifically, regarding the first two *Lopez* prongs, he contends that, unlike § 2250(a), on its face § 16913 does not regulate either "the use of the channels of interstate commerce" or "the instrumentalities of interstate commerce[, or persons or things in interstate commerce]." *Id.* at 1163. Regarding the third *Lopez* prong, he further contends that § 16913 is invalid because it does not regulate "activities that substantially affect interstate commerce." *Id.* at 1164-65. The defendant argues that § 16913 fails under *Morrison* because it (1) "regulates activity which is not economic in nature" and (2) "does not contain a jurisdictional element" to limit its reach to sex offenders connected with or affecting interstate commerce. *See* D.I. 27 at 5. He reasons that SORNA is constitutionally defective because:

> the registration requirement at [S]ection 16913 is unconstitutional; therefore, in requiring proof of a failure to register under Section 16913, the criminal statute at 18 U.S.C. § 2250(a) is itself rendered unconstitutional.

D.I. 27 at 5 (adopting the reasoning in *Waybright*, 561 F. Supp. 2d at 1168).

The court is unpersuaded by these arguments. First, the court does not agree with the analysis

Case 1:08-cr-00059-GMS Document 40 Filed 02/10/09 Page 14 of 18 PageID #: 183

of the district court in *Waybright*. Specifically, the court does not endorse the narrow view of § 16913's coverage that the *Waybright* court espouses.[13] Indeed, the majority of courts that have addressed this issue have disagreed with the analysis and the approach taken in *Waybright*. *See, e.g., United States v. Howell*, No. 08-2126, 2009 U.S. App. LEXIS 541, at *8-9 n.3, 12-13 (8th Cir. Jan. 13, 2009) (finding the *Waybright* analysis "unpersuasive"); *United States v. Fuller*, No. 5:07-CR-462 (FJS), 2008 U.S. Dist. LEXIS 66741, at *13 (N.D.N.Y. Mar. 27, 2008) ("SORNA's registration and penalty provisions cannot be viewed separately in this manner.") (citations omitted); *United States v. Van Buren, Jr.*, No. 3:08-CR-198, 2008 U.S. Dist. LEXIS 61765, at *41 (N.D.N.Y. Aug. 8, 2008) (holding that "§ 16913 and § 2250(a) are interrelated such that a facial challenge to one part of the SORNA cannot be resolved without resort to the totality of the statute"); *United States v. Contreras*, No. EP-08-CR-1696-PRM, 2008 U.S. Dist. LEXIS 102994, at *12 (W.D. Tex. Dec. 19, 2008) (concluding that "§ 16913 does not violate the Commerce Clause"); *United States v. Thomas*, 534 F. Supp. 2d 912, 921 (N.D. Iowa 2008) (same).

The court is simply not convinced that the *Waybright* analysis of § 16913 represents the best approach. One reason for this is well stated by the court in *Fuller*, which noted that:

> [§ 2250(a) and § 16913] are components of a symbiotic statutory scheme in which there is no criminal penalty unless there is a failure to register and, conversely, failure to register cannot be enforced without a criminal penalty. Considering both statutes together, it is clear that Congress does not attempt to punish sex offenders for intrastate failure to register. Rather, the federal government gains jurisdiction only where a person required to register under SORNA travels in interstate . . . commerce . Accordingly, the Court finds that SORNA's registration requirements and penalty provision are valid attempts to regulate persons in interstate commerce.

---

[13] *See United States v. Howell*, No. 08-2126, 2009 U.S. App. LEXIS 541, at * 12 (8th Cir. Jan. 13, 2009) (warning that a "narrow discussion which only analyzes § 16913 under the three categories of Lopez casts doubt on the constitutionality of § 16913").

*Fuller*, 2008 U.S. Dist. LEXIS 66741, at *13-14 (citation omitted). Consistent with the view expressed by the court in *Fuller*, and the majority of other courts that have addressed this precise issue, this court, too, will decline to follow the rationale set forth in *Waybright*.[14]

In addition, the court finds that § 16913 is valid under the Necessary and Proper Clause. *See, e.g., United States v. Shenandoah*, 572 F. Supp. 2d 566, 577 (M.D. Pa. 2008). Specifically, the Necessary and Proper Clause grants Congress the power to "make all Laws which shall be necessary and proper" for executing its other enumerated powers. U.S. Const. art. I, § 8, cl. 18. Therefore, in "conjunction with the Commerce Clause, the Necessary and Proper Clause permits Congress to 'regulate even those intrastate activities that do not themselves substantially affect interstate commerce,' so long as the Congressional enactment is 'necessary to make a regulation of interstate commerce effective.'" *Id.* at 577 (quoting *Gonzales*, 545 U.S. at 35). Thus, when analyzed in conjunction with the Commerce Clause and the Necessary and Proper Clause, § 16913 does, indeed, satisfy constitutional muster.

Moreover, in *Shenandoah*, the court held that "SORNA's registration provision [*i.e.*, § 16913] is reasonably adapted to meet the Congressional purpose of monitoring sex offenders who transgress state lines . . . [and] is [therefore] authorized by the Necessary and Proper Clause." *Id.* at 577. Likewise, in *Howell*, the Eighth Circuit held that "§ 16913 is constitutional under Congress's authority to use the necessary and proper means to further its [C]ommerce [C]lause power because it 'is a necessary part of a more general regulation of interstate commerce.'" *Howell*, 2009 U.S. App.

---

[14] There are a few other district courts that have reached conclusions similar to *Waybright*. *See United States v. Myers*, No. 08-60064-CR-ZLOCH, 2008 U.S. Dist. LEXIS 99384 (S.D. Fla. Dec. 9, 2008); *United States v. Guzman*, 582 F. Supp. 2d 305 (N.D.N.Y. 2008); *United States v. Hall*, 577 F. Supp. 2d 610 (N.D.N.Y. 2008). The court finds these decisions equally unpersuasive.

LEXIS, at *20-21 (quoting *Gonzales*, 545 U.S. at 37). The Eighth Circuit reasoned that:

> Although § 16913 may reach a wholly intrastate sex offender for registry information, § 16913 is a reasonable means to track those offenders if they move across state lines. In order to monitor the interstate movement of sex offenders, the government must know both where the offender has moved and where the offender originated.

*Id.* at *20. The court agrees with this rationale. Like the courts in *Howell* and *Shenandoah*, and contrary to the defendant's assertions, the court finds that § 16913 does not exceed Congress' authority under the Commerce Clause.

### B. The Due Process Clause

Lastly, the defendant contends that his prosecution under SORNA violates his due process rights. Specifically, he argues that "[42 U.S.C. § 16913] requires that sex offenders be given notice of their obligation to register under SORNA, and that the U.S. Attorney General failed to meet his notice obligations under 42 U.S.C. § 16917(b)." (D.I. 27 at 2.) Citing the U.S. Supreme Court's opinion in *Lambert v. California*, 355 U.S. 225 (1957), he argues that his prosecution violates the Due Process Clause because, among other things, he was not given fair notice of the prohibited criminal conduct for which he is being indicted. In essence, the defendant raises an "ignorance of the law" argument.

The court finds this argument unavailing. First, as the government correctly notes, § 2250(a) does not require that the defendant be given specific notice of his duty to register. Indeed, notice is not an element of a § 2250(a) offense. *See, e.g., United States v. Keleher*, No. 1:07-cr-00332-OWW, 2008 U.S. Dist. LEXIS 105532, at *18 (E.D. Cal. Nov. 19, 2008) ("[R]eceipt of notice as required under § 16917(a) is not an element of a 18 U.S.C. § 2250 offense.") (citation omitted); *United States v. Elmer*, No. 08-200033-01-KHV, 2008 U.S. Dist. LEXIS 73220, at *10 ("Notice of the particular

statute is not an element of a criminal violation of Section 2250."); *United States v. Brown*, No. 08-0224-WS, 2008 U.S. Dist. LEXIS 66285, at *7 (S.D. Ala. Aug. 28, 2008) ("The courts that have addressed the issue . . . have rejected the notion that SORNA makes notice under Section 16917 a necessary predicate to prosecution."); *Shenandoah*, 572 F. Supp. 2d at 582 (concluding that "nothing in the plain language of SORNA indicates that Congress intended a state's compliance with § 16917 to be a precondition to prosecution for failing to comply with SORNA"); *United States v. Dixon*, No. 3:07-CR-72(01) RM, 2007 U.S. Dist. LEXIS 94257, at *4 (N.D. Ind. Dec. 18, 2007) (same).

Second, the defendant's notice argument has been rejected by the majority of courts that have addressed this precise issue. *See, e.g., May*, 535 F.3d at 921; *Wrance*, 548 F.3d at 1338; *Hinckley*, 2008 U.S. App. LEXIS 24989, at *32-33; *Dixon*, 2008 U.S. App. LEXIS 26820, at *8-10; *Shenandoah*, 572 F. Supp. 2d at 578. Like those courts, this court, too, is not persuaded that the defendant's prosecution under SORNA violates his due process rights. The defendant has not demonstrated that the Due Process Clause requires that he be given specific notice of his obligation to register under SORNA. This argument, therefore, must fail.

## VI. CONCLUSION

For the foregoing reasons, the court will deny the defendant's motion to dismiss the indictment.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| v. | ) Criminal Action No. 08-59-GMS |
| THOMAS PENDLETON, | ) |
| Defendant. | ) |

### ORDER

For the reasons stated in the court's Opinion of this same date, IT IS HEREBY ORDERED THAT:

1. The defendant's motion to dismiss the indictment (D.I. 27) is DENIED.

Dated: February 10, 2009

_____
CHIEF UNITED STATES DISTRICT JUDGE