IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) |
| v. | ) ) Criminal Action No. 08-59-GMS ) |
| THOMAS PENDLETON, | ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM

### I. INTRODUCTION

On April 10, 2008, the defendant, Thomas Pendleton ("Pendleton"), was indicted by a federal grand jury for one count of violating 18 U.S.C. § 2250 by failing to register as a sex offender as required by the Sex Offender Registration and Notification Act ("SORNA"). On April 15, 2009, after a two-day trial, a jury returned a verdict of guilty. On May 22, 2009, Pendleton filed the instant reserved motions for judgment of acquittal pursuant to Fed. R. Crim. P. 29(b). (D.I. 68.) After having considered the record in this case, the parties' arguments and briefing, and the applicable law, the court concludes that the evidence presented at trial was sufficient to sustain the jury's guilty verdict. The court will, therefore, deny Pendleton's motion for judgment of acquittal. The court's reasoning is as follows.

## II. BACKGROUND[1]

### A. <u>Procedural History</u>

On April 10, 2008, Pendleton was indicted by a federal grand jury for failure to register as a sex offender, in violation of SORNA. (D.I. 11.) Specifically, the indictment alleges that:

> From on or about January 28, 2008, to on or about March 10, 2008, in the State and District of Delaware, and elsewhere, Thomas S. Pendleton, a person required to register under Sex Offender Registration and Notification Act, Title 42, United States Code, Section 16901 *et seq.* ("SORNA"), having traveled in interstate and foreign commerce subsequent to his conviction for a sex offense, a conviction on or about September 30, 1992, in the state of New Jersey, and a conviction on or about October 16, 2006, in District Court of Kempten, Germany, did knowingly fail to register and update a registration as required by SORNA, in violation of Title 18, United States Code, Section 2250(a).

(Indictment at 1.) On April 17, 2008, Pendleton entered a plea of not guilty to the indictment.

On July 31, 2008, the government filed a bill of particulars alleging that: (1) Pendleton failed to register as required by federal law in Delaware, Illinois, Maryland, Pennsylvania, and California; (2) Pendleton's duty to register under 18 U.S.C. § 2250(a) was triggered by his conviction on or about September 30, 1992, in the state of New Jersey, and his conviction on or about October 16, 2006, in District Court of Kempten, Germany; and (3) Pendleton traveled in interstate commerce

---

[1] Much of the factual background surrounding this matter is well-known to the parties and has been recited extensively in prior memoranda, orders and submissions by the parties in this proceeding. As such, and because the court writes primarily for the parties, the court will focus only on certain evidence and testimony presented at trial relevant to the defendant's motion for judgment of acquittal.

between his deportation from Germany on January 21, 2008,[2] and his arrest on March 10, 2008. (D.I. 23.)

Trial commenced on April 14, 2009. At trial, Pendleton stipulated that he was a "sex offender" based upon his 1992 New Jersey conviction and his 2006 German conviction. (Tr. 23-24.) Pendleton did not dispute that during the time period identified in the indictment, he traveled between the states of Delaware, Illinois, Pennsylvania and California. (*Id.* at 116-118.) Neither did Pendleton dispute that he did not register as a sex offender in the State of Delaware. (*See* D.I. 68 at 4, *citing* Tr. at 77.) What he did dispute was the existence of a duty to register based upon "residence" in the State of Delaware.

At the close of the government's evidence, Pendleton moved for judgment of acquittal on three grounds. In his first motion for judgment of acquittal, Pendleton argued that the government had failed to meet its burden of proving "knowledge" under 18 U.S.C. § 2250(a)(3). Specifically, he argued that the government failed to prove that he had knowledge of a federal duty to register under SORNA. This first motion for judgment of acquittal was denied on the merits. (Tr. at 140-41.)

Pendleton's second motion for judgment of acquittal concerned the element of "residence." (Tr. at 141.) In a prosecution under 18 U.S.C. § 2250(a), the government must prove that the defendant was required to register under SORNA, and under SORNA, the registration requirement arises "where the offender resides." 42 U.S.C. § 16913(a). Pendleton argued that the government

---

[2] Pendleton does not contest that he was deported from Germany to the United States on January 21, 2008. (*See* D.I. 27 at 8.)

had failed to prove a duty to register arising from residence. On this second motion for judgment of acquittal, the court reserved its ruling under Criminal Rule 29(b). (*Id.* at 142.)

In his third motion for judgment of acquittal, Pendleton asserted that the government had the burden of proving a duty to register under both federal and state law, and that the evidence was insufficient to prove a state law duty to register. (*Id.* at 142.) On this third motion for judgment of acquittal, the court again reserved its ruling under Criminal Rule 29(b). (*Id.* at 143.)

The defense rested without offering evidence. (*Id.* at 144.) The case was submitted to the jury, and on April 15, 2009, the jury returned a verdict of guilty. (*Id.* at 199.) Pendleton then submitted motions for judgment of acquittal on the grounds that were reserved by the court.

### B. Facts Relating to Pendleton's Residence

At trial, the government proceeded on the theory that Pendleton resided in the State of Delaware. The government pursued two lines of evidence in support of this theory. First, the government showed that Pendleton had established a mail drop at 202 West 14th Street, Wilmington, Delaware. Second, the government introduced a succession of applications, forms and statements wherein Pendleton represented that he resided at 202 West 14th Street. The existence of the Wilmington mail drop was proven through the testimony of government witness Katherine Bayard, who testified that she then lived at 202 West 14th Street, Wilmington, Delaware. (Tr. at 63.) Ms. Bayard knew of Thomas Pendleton as "a person who was friendly with my parents." (*Id.* at 65.) She also knew that Pendleton's mail had been coming to the house, and that her father had been holding the mail for Pendleton. (*Id.* at 66.) However, Ms. Bayard also testified that Pendleton did not have a key to the house and had never stayed overnight at the house. (*Id.* at 67-68.)

4

Sometime between January and March of 2008, Ms. Bayard checked her answering machine and found a message from Pendleton, requesting an opportunity to pick up his mail. (Tr. 68.) Ms. Bayard arranged to leave the mail for him in a mail box located on the outside of the house. (Tr. 68-69.) On March 10, 2008, Pendleton was arrested when he came to pick up the mail. (*Id.* at 81, 86.)

The government also produced evidence that from April 29, 2005, through Pendleton's arrest on March 10, 2008, Pendleton on at least a dozen occasions represented that he maintained a residence at 202 West 14th Street, Wilmington, Delaware:

(1) In an April 29, 2005, e-mail to his probation officer in Washington, D.C., Pendleton stated that "[e]ffective May 1, 2005, I am moving my residence from the District of Columbia to the State of Delaware." (Tr. at 39-40.) Pendleton gave his new address as 202 West 14th Street in Wilmington. (*Id.* at 40.)

(2) On May 4, 2005, Pendleton filled out a Delaware voter registration form, providing an address of 202 West 14th Street in Wilmington, and representing that he was a "permanent resident" of Delaware. (*Id.* at 50-51.)

(3) Also on May 4, 2005, Pendleton applied for a Delaware motor vehicle license, gave an address of 202 West 14th Street in Wilmington, and certified on the application form that he was a "bona fide resident of Delaware." (*Id.* at 52-53.)

(4) Upon his re-entry to the United States on January 21, 2008, Pendleton told the customs agent at JFK Airport that he would be residing at 202 West 14th Street in Wilmington, Delaware. (*Id.* at 55-56.)

(5) In his customs declaration form submitted upon re-entering the United States, Pendleton listed a street address of 202 West 14th Street, Wilmington, Delaware. (*Id.* at 57-59.)

(6) In three passport applications filed in 2005, 2006, and 2008, Pendleton listed a permanent address of 202 West 14th Street, Wilmington, Delaware. (*Id.* at 60-63.)

(7) When registering his membership in the organization "Hostelling International," Pendleton used the 202 West 14th Street address. (*Id.* at 85-86, 88.)

(8) Pendleton used the 202 West 14th Street address on his luggage tags. (*Id.* at 110-11.)

(9) Pendleton used the Wilmington address in setting up his Discover credit card account. (*Id.* at 112-15.)

(10) Pendleton used the Wilmington address in setting up his account with M&T Bank. (*Id.* at 112-15.)

(11) In e-mails sent to friends during the course of his interstate travels, Pendleton stated that he had taken a train to Wilmington, Delaware, which he called his "home town," and said that he had arranged to stay with his "old friends there, the Newlons." (Gov. Ex. 33, referenced in Tr. at 130.)

(12) In a statement made just before his arrest in 2008, Pendleton told the U.S. Marshal that 202 West 14th Street was his address, that he lived at that address, that he had lost his key, and that he was waiting for the other occupant to get home and let him in. (Tr. at 84-85.)

### C.  Registration Requirements

The indictment alleges that Pendleton had a duty to register based upon a 1992 New Jersey sex offender conviction and a 2006 German sex offender conviction. The same two convictions are listed in the government's Bill of Particulars at Item 2. At trial, the court

6

instructed the jury that "a defendant is required to register under [SORNA] if he is classified as a sex offender under federal law. A sex offender is a person who has been convicted of a qualifying sex offense . . . Now with regard to the first element, the parties have stipulated that Pendleton was classified as a sex offender under federal law . . . ." (Tr. at 167.).

## III. PARTIES' CONTENTIONS

Pendleton argues that he did not "reside" in Delaware for the purposes of SORNA because the 202 West 14th Street address was not his "home." Pendleton urges the court to interpret "home" narrowly as referring only to a person's "dwelling place." Pendleton reasons that since he never stayed overnight at the 202 West 14th Street address, that address could not have been his home, and thus he did not "reside" there for the purposes of SORNA. (D.I. 68 at 11-12.) The government argues that Pendleton's proposed interpretation of "resides" is too narrow and is incompatible with the comprehensive system of sex offender registration established by SORNA. (D.I. 69 at 8-9.)

Pendleton also argues in his brief that neither the New Jersey conviction nor the German conviction triggered a duty to register under the Delaware statute in effect during the time period alleged in the indictment (D.I. 68 at 8-9), and that this relieved Pendleton of any duty to register in Delaware under SORNA. (*Id.* at 15-18.) The government responded in its own brief that Delaware state law registration requirements are immaterial in determining whether a person is required to register under SORNA. (D.I. 69 at 20-21.)

## IV. STANDARD OF REVIEW

A motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure may only be granted where the evidence is insufficient to sustain a conviction. *See United States v.*

*Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990). In deciding such a motion, the court must view the evidence in the light most favorable to the government. *See United States v. Gambone*, 314 F.3d 163, 169-70 (3d Cir. 2003). Indeed, the jury verdict will stand if there is substantial evidence, either direct or circumstantial, to support the conviction. *Id.* at 169-70 (citations omitted); *see also United States v. Cohen*, 455 F.Supp. 843, 852 (E.D. Pa. July 18, 1978), *aff'd*, 594 F.2d 855 (3d Cir. 1979).

On a motion for judgment of acquittal, a defendant cannot prevail by raising questions as to the weight of the evidence or the credibility of the witnesses. *See Cohen*, 455 F.Supp. at 852. Instead, in order to prevail, a defendant must show that no rational jury "could have found [] guilt beyond a reasonable doubt based on the available evidence" presented at trial. *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005). Thus, a finding that a jury verdict is insufficient as a matter of law should "be confined to [those] cases where the prosecution's failure is clear." *See United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (citing *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)).

## V. DISCUSSION

### A. "Resides" and "Home" Under SORNA

Pendleton argues that he was not required to register under SORNA because he did not "reside" in Delaware. The elements of failing to register as a sex offender under SORNA are: 1) the person must be required to register under SORNA; 2) the person must either be convicted of a sex offense under federal law or travel in interstate or foreign commerce; and 3) must knowingly fail to register or update a registration as required by SORNA. *See* 18 U.S.C. § 2250(a). Under SORNA, a person is required to register and update his registration "in each jurisdiction where the offender resides." 42 U.S.C. § 16913(a). Another provision of SORNA states that "the term 'resides' means,

with respect to an individual, the location of the individual's home or other place where the individual habitually lives." The court assumes without deciding that Pendleton did not "habitually live" at 202 West 14th Street during the time in question. The key question, therefore, is whether Pendleton's use of 202 West 14th Street as a "mail drop," when combined with his repeated representations that 202 West 14th Street was his permanent address, is sufficient to make that address Pendleton's "home" within the meaning of 42 U.S.C. § 16911(13).

SORNA does not provide a definition for "home" within the text of the statute. However, SORNA states that "[t]he Attorney General shall issue guidelines and regulations to interpret and implement this subchapter." *See* 42 U.S.C. § 16912(b). On July 2, 2008, the Attorney General issued a guideline stating, in part, that:

> SORNA § 111(13) . . . defines "resides" to mean "the location of the individual's home or other place where the individual habitually lives." This entails that a sex offender must register:
>
> In any jurisdiction in which he has his home; *and*
> In any jurisdiction in which he habitually lives (even if he has no home or fixed address in the jurisdiction, or no home anywhere).
>
> The scope of "habitually lives" in this context is not self-explanatory and requires further definition. An overly narrow definition would undermine the objectives of sex offender registration and notification under SORNA. For example, consider the case of a sex offender who nominally has his home in one jurisdiction--*e.g., he maintains a mail drop there*, or identifies his place of residence for legal purposes as his parents' home, where he visits occasionally--but he lives most of the time with his girlfriend in an adjacent jurisdiction. Registration in the nominal home jurisdiction alone in such a case would mean that the registration information is not informative as to where the sex offender is actually residing, and hence would not fulfill the public safety objectives of tracking sex offenders' whereabouts following their release into the community.

Office of the Attorney General, The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38030-01, 2008 WL 2594934, at *38061-62 (July 2, 2009) (emphasis

added). These guidelines seem to imply that registration in a "nominal home jurisdiction," such as a mail drop or a location that Pendleton identifies as his home address, is one of the places where a sex offender is required to register under SORNA.

Pendleton urges the court to interpret "home" as having a far more limited meaning for SORNA purposes. The crux of Pendleton's argument is that interpreting the statute to include mail drops within the meaning of "home" would be contrary to the plain meaning of the statute. Citing Black's Law Dictionary, Pendleton contends that an individual's "home" is his "dwelling place." D.I. 68 at 11-12 (citing Black's Law Dictionary, Eighth Edition (2004)). Since the uncontradicted testimony of the government's witness at trial indicated that Pendleton had never stayed overnight at 202 West 14th Street, Pendleton argues that he was not required to register for that address under SORNA. Relatedly, Pendleton argues that since the Attorney General's guidelines depart from the plain meaning of the statute and since the Attorney General's guidelines were not promulgated until after Pendleton's arrest, applying the Attorney General's guidelines to Pendleton would violate the Ex Post Facto clause.

However, as Pendleton acknowledges in his brief, the Ex Post Facto clause applies only to "legislative" rules and not to "interpretive" rules. While the distinction between these types of rules is perhaps not altogether clear, the Third Circuit has stated that:

> [W]here a new rule constitutes a clarification-rather than a substantive change-of the law as it existed beforehand, the application of that new rule to pre-promulgation conduct necessarily does not have an impermissible retroactive effect, regardless of whether Congress has delegated retroactive rulemaking power to the agency.

*Levy v. Sterling Holding Co.*, 544 F.3d 493, 506 (3d Cir. 2008).

Pendleton argues here that the Attorney General's guidelines were "legislative" rules because

they created a new "legal duty" as to where sex offenders are required to register. There is, however, no indication in the SORNA provision calling for the Attorney General to promulgate guidelines that such guidelines would have the force of substantive law. Furthermore, the Attorney General's guidelines as to the meaning of the terms in 42 U.S.C. § 16911 are explicitly characterized as a "clarification" of the preexisting provisions of SORNA. *See* 73 Fed. Reg. 38030-01 ("The portion of the guidelines relating to the jurisdictions in which registration is required has been edited to a limited extent for clarity on some points but has not been substantially changed."). Thus, it would appear that the guidelines did not have, and were not intended to have, the force and effect of new substantive law. As a result, the court concludes that it can consider the Attorney General's guidelines and that the guidelines, as applied to Pendelton's situation, do not run afoul of the Ex Post Facto clause.

In this case, the court finds that 202 West 14th Street was Pendleton's "home" for the purposes of SORNA registration. Pendleton not only used 202 West 14th Street as a mail drop, but also listed the address as his legal residence on a number of occasions and for a number of purposes between 2005 and 2008. Pendleton described the address as his home or residence in contexts ranging from its use on personal luggage tags to bank statements to passport applications. Perhaps most notably, Pendleton informed an agent of the District of Columbia Court Services and Offender Supervision Agency on April 29, 2005 that he was "moving [his] residence from the District of Columbia to the State Delaware" and provided 202 West 14th Street as his "new address." (D.I. 69 at 3.) These facts, when combined with Pendleton's admitted use of the address as a mail drop, are more than sufficient to establish that he resided at 202 West 14th Street for the purposes of SORNA registration.

11

Pendleton's actions in this case serve as an apt illustration of why his proposed interpretation of SORNA should be rejected. If the court were to adopt Pendleton's interpretation, a sex offender could escape SORNA's registration requirements simply by declaring a mail drop or other nominal address as his legal residence and listing that address on all legal documents. In such a case, the address where the offender actually dwelled would never appear in sex offender registries, and the offender would be relieved of his obligation to register at his nominal address because he was not actually dwelling there. Thus, under Pendleton's interpretation, a sex offender using a nominal legal address would be able to totally escape SORNA's registration requirements. Indeed, Pendleton's actions in this case demonstrate precisely how a defendant might obtain such a result. Pendleton told the District of Columbia's Offender Supervision Agency that he no longer resided in the District of Columbia and had moved to Delaware, but once he was arrested and charged with failing to register in Delaware, he attempted to escape conviction by claiming that he actually still resided in the District of Columbia. Allowing sex offenders to escape registration through such machinations would be contrary to SORNA's express purpose of "establish[ing] a comprehensive national system for the registration" of sex offenders. 42 U.S.C. § 16901. Similarly, the court is persuaded by the portion of the Attorney General's guideline reasoning that a narrow interpretation of "resides" would allow many defendants who maintain no permanent residence to escape SORNA's registration provisions, a result equally at odds with SORNA's purpose.

For these reasons, the court concludes that Pendleton "resided" at 202 West 14th Street for the purposes of 42 U.S.C. § 16913(a) during the time in question, and his failure to register for that address thus constituted a violation of SORNA.[3]

---

[3] The court need not reach the question of whether a "mail drop" constitutes a "home" for the purposes of 42 U.S.C. § 16911(13) if a defendant never otherwise claims the address to be his

### B. Duty to Register Under State Law

Pendleton also contends that under SORNA, the government must establish that a defendant had a duty to register under both state and federal law before he can be convicted for failure to register. Pendleton argues that a contrary interpretation would raise serious constitutional issues on the basis of (1) lack of fair notice under the Fifth Amendment due process clause, and (2) the Tenth Amendment "anti-conscription" rule established in *Printz v. United States*, 521 U.S. 898 (1997). The basis of Pendleton's "fair notice" objection is not entirely clear, but he seems to argue that SORNA's requirement that an offender register "in" each jurisdiction where he resides should be interpreted as requiring registration "under the laws of" that jurisdiction.

Pendleton cites no authority for this interpretation, and in any case the interpretation has no basis in the statutory text, which is perfectly clear as to who is required to register as a sex offender under federal law. *See* 42 U.S.C. § 16911 (defining "sex offender" and describing the different categories of "sex offenses" for which offenders are required to register under SORNA). The provisions of 42 U.S.C. § 16911 give clear notice under federal law as to who must register pursuant to SORNA and make no reference to state law registration requirements. The mere fact that the individual states may maintain and administer sex offender registries does not render ambiguous SORNA's clearly-stated requirements or otherwise create a "fair notice" problem. Since SORNA's provisions were in effect at the time of Pendleton's arrest, Pendleton had fair notice both of the registration requirements under federal law and of the fact that the federal law requirement is not dependant on the dictates of state law.

---

legal or actual residence. The court holds only that where a defendant uses an address as a mail drop and repeatedly holds that address out as his legal residence, the defendant "resides" at that address for the purposes of 42 U.S.C. § 16913(a).

Pendleton's search for protection under the Tenth Amendment anti-conscription doctrine announced in *Printz* is also unavailing. SORNA does not require state governments to implement its provisions; at most, it makes certain federal law enforcement funding contingent on state compliance with SORNA. States are free to refuse to implement SORNA, and SORNA itself makes clear that implementation of its provisions is a matter of choice rather than a mandate. *See* 42 U.S.C. § 16925(a) ("For any fiscal year after the end of the period for implementation, a jurisdiction that fails, as determined by the Attorney General, to substantially implement this subchapter shall not receive 10 percent" of specified federal law enforcement funds). In fact, if full implementation of SORNA would violate a state's constitution, SORNA allows that state some flexibility in implementing its provisions without risking the state's receipt of federal funding. *See id.* § 16925(b)(3) ("If the jurisdiction is unable to substantially implement this subchapter because of a limitation imposed by the jurisdiction's constitution, the Attorney General may determine that the jurisdiction is in compliance with this chapter if the jurisdiction has made, or is in the process of implementing reasonable alternative procedures or accommodations, which are consistent with the purposes of this chapter."). Since states are not required to implement SORNA's provisions, the Tenth Amendment anti-conscription doctrine is inapplicable to Pendleton's circumstances.

## VI. CONCLUSION

For the foregoing reasons, and because Pendleton has not met his burden of showing that the evidence presented at trial was insufficient to support his conviction, the court will deny his motion.

Dated: September 1⁄, 2009

_____
CHIEF, UNITED STATES DISTRICT JUDGE

14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal Action No. 08-59-GMS |
| | ) |
| THOMAS PENDLETON, | ) |
| | ) |
| Defendant. | ) |

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED THAT:

1. The defendant's reserved motion for judgment of acquittal (D.I. 68) is DENIED.

Dated: September 18, 2009

CHIEF, UNITED STATES DISTRICT JUDGE